## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN LAROCCA,<br>    Plaintiff, | |
| v. | No. 3:13-cv-01872 (JAM) |
| FRONTIER COMMUNICATIONS, CORP.,<br>    Defendant. | |

### RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is primarily an age discrimination case. Plaintiff John LaRocca worked as an accountant for defendant Frontier Communications in Stamford, Connecticut for ten years. In 2011, when plaintiff was 58, defendant transferred his employment group's duties to Pennsylvania and eliminated his position. The other four members of his group secured new jobs within the company but plaintiff was not re-hired. Plaintiff claims defendant discriminated against him based on his age and otherwise misled him about its intent to hire him for another position in the company.

Defendant has now moved for summary judgment. I conclude there are no genuine issues of material fact and will grant defendant's motion for summary judgment.

### BACKGROUND

At the time he lost his job, plaintiff was a 58 year-old man who had completed three years of a four-year accounting degree. He began working as an accountant for defendant's predecessor company, Citizens Communications, in 2001 when he was 48 years old. Kalindi Bhatt was one of the decision-makers who hired him. Plaintiff worked in a variety of groups, and he was promoted to senior accountant sometime in his mid-50s. He was transferred to the so-called Cash Group in 2008. While in the Cash Group, plaintiff received generally positive

performance reviews; over the last two evaluations, he had the second highest average rating among his co-workers in the group. His average rating over 2009 and 2010 was 3.56. By comparison, co-worker Carlos Hernandez' average rating was 3.51, Ronda Layne-Judge's average rating was 3.32, and Lori Nerkowski's average rating was 3.10. John Alcaide, plaintiff's supervisor, had an average rating of 3.67.

Sometime in August or September 2011, the Cash Group members were informed that the group's duties were being transferred to Pennsylvania, that their jobs were being eliminated, and that they could apply for other jobs within the company. In early August, Accounting Manager Joanne Pasqualini sent an email to all five members of the Cash Group reporting that the Chief Accounting Officer, Susan D'Emic, had told her "no one should be worried, there will be plenty of work in Stamford." Doc. #53-2 at 3. According to plaintiff, D'Emic made other, similar statements in meetings around the same time.

Plaintiff formally applied for two supervisory positions in the Fixed Assets Group, and he also interviewed for a senior accountant position in that group. The postings for these jobs listed a four-year accounting degree as either "required" or "preferred." Plaintiff was not hired for any of these positions. The person hired for the supervisory position was Sarah Pikikero, who had previously worked for Frontier in the Fixed Assets Group, met the educational requirements, and had supervisory experience. The two people who were hired for the senior accountant positions were Carlos Hernandez, whom plaintiff concedes was qualified, and Ronda Layne-Judge, a former accountant in the Cash Group. She had 12 years of experience in accounting and auditing and a bachelor's degree in accounting. During the same period, defendant also hired Richard Mora, a 56-year-old former Frontier contractor, as a senior accountant in the Asset Accounting department. In addition, Lori Nerkowski, a Cash Group staff accountant, and Tyler Hornyak, a

2

24 year-old new employee, also obtained staff accountant positions, which paid about $20,000 a year less than plaintiff's previous position.

During this period, plaintiff had discussions about open positions with at least two managers, Rosa Jean Lake and Rick Taracka, of the Fixed Assets Group. Plaintiff believed that he did not have to formally apply for jobs within the company, but that the various managers understood he was looking for a new job and would consider him for positions relevant to his background. At one point, Taracka allegedly said to plaintiff, "I am aware of your situation, John, but it's out of my hands." Further, when questioned about plaintiff's application, Lake allegedly reported that she had asked Kalindi Bhatt, "Why can't this guy be hired?" When plaintiff asked what the response from Bhatt was, Lake shrugged her shoulders and raised her hands.

In the months between when he found out his position was being eliminated and November 2011, plaintiff did not seek employment outside the company, because he believed he would find continued work with defendant. But when he did not find another job at the company, he was terminated from the company's employment in November 2011. Plaintiff has not worked since then.

Plaintiff subsequently dual-filed a complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the United States Equal Employment Opportunity Commission. Following a CHRO release of jurisdiction, plaintiff filed this action in Connecticut Superior Court, which defendant removed to this Court. Plaintiff alleges discrimination based on age, gender, and race. He also brought harassment, hostile work environment, and retaliation claims, as well as promissory estoppel, negligence and negligent and fraudulent misrepresentation claims under state law. Plaintiff has abandoned many of these claims. The

3

only ones that remain are his claims for age discrimination, promissory estoppel, and negligent and fraudulent misrepresentation.

**DISCUSSION**

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### *The Age Discrimination Claims*

Plaintiff brings claims for age discrimination both under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621, *et seq*., and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60, *et seq*. Both ADEA and CFEPA age claims are analyzed under the familiar three-part *McDonnell-Douglas* burden-shifting framework. *See*

4

*Delaney v. Bank of America Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014); *Rubinow v. Boehringer lngelheim Pharms.*, Inc., 496 Fed. Appx. 117, 118 (2d Cir. 2012).

For the first part of the *McDonnell-Douglas* test, a plaintiff states a *prima facie* case for age discrimination with respect to a company's failure to hire him for a new position if he shows (1) that he was in the protected age group; (2) that he was qualified for the positions he held or applied for; (3) that he was denied the positions; and (4) that the circumstances of the denial give rise to an inference of discrimination. *See D'Cunha v. Genovese/Eckerd Corp.,* 479 F.3d 193, 195 (2d Cir. 2007) (*per curiam*). If the plaintiff makes out the *prima facie* case, the second part of the *McDonnell-Douglas* test requires the defendant to articulate a legitimate, non-discriminatory reason why plaintiff was not hired or otherwise subject to an adverse job action. *Ibid.* Once a legitimate, non-discriminatory reason is advanced, any presumption of discrimination from the plaintiff's *prima facie* case drops away, and plaintiff must then carry the burden for the third part of the *McDonnell-Douglas* test to show that the non-discriminatory reason(s) advanced by the defendant are a pretext and that actual discrimination explains the defendant's action. *Ibid.; see also Delaney*, 766 F.3d at 168 (same).[1]

To prevail on an ADEA age discrimination claim, a plaintiff must not only show that his age was a "motivating factor" that led him not to be hired, but that, but for his age, he would have gotten the job. *See Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177-78 (2009); *Delaney*, 766 F.3d at 168. It remains an open question whether Connecticut appellate courts will follow *Gross* and adopt the "but for cause" test for CFEPA age discrimination claims in place of a less demanding "motivating factor" standard. *See Weisenbach v. LQ Mgmt.*, 2015 WL 5680322, at

---

[1] The ADEA's protections apply with equal force regardless of whether the defendant's adverse actions against plaintiff are characterized as terminating his existing position or declining to renew or hire him for a new position. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 501 (2d Cir. 2009).

*7-*9 (D. Conn. 2015). Because of this uncertainty and because my choice of standards would not make a difference to my ruling, I will apply the motivating factor standard for purposes of plaintiff's CFEPA claim.

As to the first part of the *McDonnell-Douglas* test, I conclude that plaintiff has satisfied his minimal burden to create at least a genuine fact issue with respect to each of the elements of a *prima facie* case, especially in view that one of the company's new hires (Tyler Hornyak) was outside the ADEA-protected class of persons 40 years or older. *See, e.g., Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *James v. New York Racing Ass'n*, 233 F.3d 149, 153-57 (2d Cir. 2000).

As to the second part of the *McDonnell-Douglas* test, it is clear that defendant has advanced legitimate, non-discriminatory reasons for the actions taken with respect to plaintiff's employment—that the company was discontinuing plaintiff's prior employment position as part of its transfer of the entire Cash Group and that the company preferred applicants with a college degree for each of the alternative positions for which plaintiff sought consideration. *See, e.g., Delaney*, 766 F.3d at 168 (noting that "a [company-wide reduction-in-force] constitutes a legitimate, nondiscriminatory reason for termination of employment"); *Charron v. City of Hartford*, 356 F. Supp. 2d 166, 170 (D. Conn. 2005) (college degree was valid non-discriminatory reason to favor one candidate over another).

Accordingly, the only question remaining concerns the third part of the *McDonnell-Douglas* test: whether there is a genuine fact issue that the company's stated reasons were a pretext (*i.e.,* incomplete or untrue) and that plaintiff's age was at least a motivating factor that led the company not to retain or re-hire him. *See Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 156-57 (2d Cir. 2010); *James*, 233 F.3d at 153-57. For several reasons outlined below, I

conclude—even viewing the facts in the light most favorable to plaintiff—that he has not

establish a genuine fact issue of age discrimination for trial.

To begin with, plaintiff has not adduced any direct evidence of age-discriminatory

animus, such as comments by supervisors about his age or the need for a younger work force.

Instead, his case depends entirely on indirect or circumstantial evidence of discrimination. But

the circumstantial evidence here does very little to show discriminatory intent. Indeed, plaintiff

was already within the ADEA-protected class (40 years or older) when he was originally hired at

the age of 48 and when he was later promoted at the age of 55 to the position of a senior

accountant in the Cash Group. *See Bruder v. Jewish Bd. of Family & Children's Servs.*, 2013

WL 789231, at *7 (E.D.N.Y. 2013) (fact that plaintiff was in protected class when hired and

promoted undermines any inference of age discrimination).

Moreover, the persons who ultimately made the hiring decisions, Steven Spencer (age 56)

and Rick Taracka (age 53), were also within the protected class when plaintiff was not hired for a

new position with the company. "Courts have recognized that an allegation that a decision is

motivated by age animus is weakened when the decisionmakers are members of the protected

class." *Ibid.* (collecting cases); *see also Sellers v. Royal Bank of Canada*, 2014 WL 104682, at

*11 (S.D.N.Y. 2014) (same), *aff'd*, 592 F. App'x 45 (2d Cir. 2015).

A plaintiff may support an inference of age discrimination by showing that the employer

gave more favorable treatment to similarly situated employees or applicants who are outside

plaintiff's protected group. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.

1999) (Sotomayor, J.). Alternatively, a plaintiff might show that the employer targeted other

employees within the protected group for similar adverse treatment as experienced by plaintiff.

*See, e.g., Leibowitz v. Cornell Univ.*, 584 F.3d 487, 505 (2d Cir. 2009) ("The fact that the six

individuals laid off were females over the age of fifty could lend support to plaintiff's argument that her age and gender were the real reasons behind the non-renewal of her contract, especially in light of the evidence that she was not considered for other vacancies that arose in 2002.") (citing other similar cases).

But these cases do not help plaintiff here. Although plaintiff's colleagues in the Cash Group who were retained in new positions by the company, Carlos Hernandez, Ronda Layne-Judge and Lori Nerkowski, were younger than plaintiff, they were also over the age of 40 when they received new job offers. Except for Tyler Hornyak, everyone that plaintiff identifies as being hired for new positions during the relevant period was within the same ADEA age-protected group as plaintiff. Perhaps most damaging to plaintiff's argument is that defendant hired Roger Mora (age 56) as a senior accountant during the same time period when it passed over plaintiff (age 58) for a new position. The fact that defendant hired someone at the same time who was essentially the same age as plaintiff severely undermines any plausible inference that the company was out to discriminate against plaintiff on the basis of age.

Plaintiff argues that he was more qualified than Ronda Layne-Judge—one of plaintiff's former colleagues who received a new job—but his basis for this argument is little more than his subjective opinion that he was a better worker. Nor in light of the other facts here is it indicative of discrimination that plaintiff had marginally higher performance evaluations than some of his colleagues who were retained by the company. *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (when basis for discrimination claim is difference in qualifications, plaintiff has a "weighty burden" to survive summary judgment to show that "plaintiff's credentials [were] so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate

8

selected over the plaintiff for the job in question") (internal quotation marks and citation omitted).

### The Tort Claims

Plaintiff also brings state law claims for promissory estoppel, negligent misrepresentation, and fraudulent misrepresentation.[2] To establish a promissory estoppel claim, a plaintiff must prove that the defendant made a clear and unambiguous promise to the plaintiff and that the plaintiff reasonably, foreseeably, and detrimentally relied on that promise. *See Curcio v. Hartford Financial Services Grp.*, 472 F. Supp. 2d 239, 244 (D. Conn. 2007); *Stewart v. Cendant Mobility Services Corp.*, 267 Conn. 96, 104-05 (2003). When the alleged promise concerns future employment, it "must be sufficiently promissory or definite to support contractual liability—i.e., they must contain the material terms that would be essential to an employment contract, such as terms regarding the duration and conditions of the plaintiff's employment, and [his] salary and fringe benefits." *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 308 (D. Conn. 2000) (citing *D'Ulisse–Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 215 (1987)).

Plaintiff cannot satisfy this standard. Statements from company managerial employees to the entire Cash Group that "no one should worry" and that there was "plenty of work in Stamford" are far from the level of specificity or definiteness required to give rise to promissory employment liability. *See, e.g., Grossman*, 131 F. Supp. 2d at 308 ("oral reassurances of continued job security" insufficient to give rise to promissory estoppel). It is undisputed that

---

[2] A district court may exercise supplemental jurisdiction over state law claims that are part of the same case or controversy as the federal claims. 28 U.S.C. § 1367. Once the federal claims have been dismissed, in deciding whether to retain supplemental jurisdiction, the Court "balance[s] the traditional values of judicial economy, convenience, fairness and comity in deciding whether to extend jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Because "the remaining state law issues are easily resolved," I will retain jurisdiction over those claims. *Williams v. Citigroup, Inc.*, 2009 WL 3682536, at *8 (S.D.N.Y. 2009) *aff'd in part, vacated in part on other grounds*, 659 F.3d 208 (2d Cir. 2011) and 433 F. App'x 36 (2d Cir. 2011).

these "promises" never included a discussion of salary, job title, fringe benefits, or any of the other specifics that would necessarily be included in an employment contract. There was no specific promise here, and I will therefore dismiss plaintiff's promissory estoppel claim for continued employment.

Plaintiff also alleges claims for negligent and fraudulent misrepresentation. To prevail on a claim for negligent misrepresentation, a plaintiff must show (1) that the defendant misrepresented a fact; (2) that the defendant knew or should have known that its representation was false; (3) that the plaintiff justifiably relied on that misrepresentation; and (4) that the plaintiff suffered a financial injury as a result. *See Kloth-Zanard v. Amridge Univ.*, 2012 WL 2397161, at *5 (D. Conn. 2012). The elements of fraudulent misrepresentation are similar. For such claims, a plaintiff must show (1) that a false misrepresentation was made as a statement of fact; (2) that it was known to be untrue by the party making it; (3) that it was made to induce the other party to act upon it; and (4) that the other party acted upon the false representation to that party's detriment. *See Javier v. Deringer-Ney, Inc.*, 2009 WL 3193876, at *7 (D. Conn. 2009). For both types of claims, plaintiff must establish that defendant represented a statement falsely, that either he reasonably relied on it or it was made with an intention to induce him to act, and that he suffered damages as a result of acting on it.

In support of these claims, plaintiff again relies on the statements made to Cash Group members that "no one should worry" and there would be "plenty of work in Stamford." Plaintiff has not shown a genuine fact issue that these statements were untrue assertions of fact at the time that they were made, much less that they were communicated either negligently or with an intent to deceive, or that they were made with any intent to induce reliance, or that it was reasonably

10

justifiable for plaintiff to rely on these vague assurances as an automatic guarantee of future employment. Accordingly, I will dismiss the misrepresentation counts.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. #51) is GRANTED. The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 6th day of January 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge